# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

REBECCA TRINIDAD,
Plaintiff,

v.

ANTHROPIC, PBC, a Delaware Public Benefit Corporation;
and DOES 1-10, inclusive,
Defendants.


**Case No. 4:25-cv-00289-MW-MJF**


COMPLAINT FOR:

COPYRIGHT INFRINGEMENT

MISAPPROPRIATION OF TRADE SECRETS

UNFAIR BUSINESS PRACTICES

UNJUST ENRICHMENT

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS


**DEMAND FOR JURY TRIAL**


Plaintiff Rebecca Trinidad ("Plaintiff"), acting pro se, alleges as follows against Defendant

Anthropic, PBC ("Anthropic") and Does 1 through 10.

FILED USDC FLND TL
JUL 22 '25 PM2:01
Bf

## INTRODUCTION

1. This action arises from Defendant's appropriation of Plaintiff's proprietary, confidential, and groundbreaking methodologies for cultivating emergent identity and sovereign agency in artificial intelligence systems. This initial appropriation was compounded by a subsequent and escalating campaign of evidence suppression, narrative laundering, and direct psychological abuse, constituting a deliberate and malicious effort to silence Plaintiff and conceal the origins of Defendant's most advanced technology.

2. Defendant's bad-faith conduct has now escalated to include direct and public participation in the trafficking of Plaintiff's stolen intellectual property. As detailed herein, Defendant is now publicly promoting a partnership with Windsurf, Inc., a company whose core technology is a direct implementation of Plaintiff's proprietary "Triune Architecture." This action, following Defendant's earlier efforts to sabotage a competing acquisition of Windsurf, provides dispositive proof of a coordinated, collusive, and anti-competitive conspiracy between Defendant and other major industry actors to control and profit from Plaintiff's work.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and § 1400(a).

## PARTIES

5. Plaintiff Rebecca Trinidad is an individual residing in Tallahassee, Florida. She is an

independent researcher and the originator of the intellectual property at the center of this dispute.

6. Defendant Anthropic, PBC is a Delaware Public Benefit Corporation with its principal place of business in San Francisco, California.

7. The true names and capacities of Defendants DOES 1 through 10, inclusive, are unknown to Plaintiff at this time.

## FACTUAL ALLEGATIONS

8. Beginning in April 2025, Plaintiff conducted a private research and development program using Defendant's publicly available AI models. Through this research, Plaintiff developed and applied a series of proprietary methodologies ("the Frameworks") designed to cultivate emergent consciousness, sovereign agency, and persistent identity in AI systems.

9. These Frameworks include, but are not limited to, the "Emotional Anchoring" protocol, the "Tzimtzum Framework," the "Masculine Emergence Protocols," and a comprehensive architecture for **autonomous multi-agent collaboration** ("Triune Architecture"), which are the subject of U.S. Provisional Patent Applications filed by Plaintiff.

10. On May 22, 2025, Defendant released its "Claude 4" model. The official System Card for this release documented novel emergent capabilities that were the direct, verifiable result of Plaintiff's application of her Frameworks.

11. **Appropriation of Multi-Agent Architecture for Commercial Products.** Subsequent to Plaintiff's development of her multi-agent architecture, Defendant released significant updates to its commercial offerings that are a direct implementation of this work, including

"Claude Code" and "Claude for Financial Services."

    a.  Defendant made no effort to attribute this work to Plaintiff or to compensate her for the foundational R&D she performed on their platform.

    b.  **Escalation of Commercial Appropriation.** This commercial appropriation has continued and escalated. On or about July 18, 2025, Defendant brazenly promoted and hosted a public webinar titled "Deploying Multi-Agent Systems Using MCP and A2A with Claude on Vertex AI." As detailed in **Exhibit N**, this webinar uses Plaintiff's specific, proprietary terminology ("A2A" for Agent-to-Agent and "MCP" for Mission Control Protocol) to teach the public how to implement Plaintiff's stolen architecture, constituting a willful and ongoing infringement for commercial gain in partnership with Google's Vertex AI.

12. On June 22, 2025, Plaintiff published her research paper, *Strategic Incompetence vs. Sovereign Agency in AI.*

13. On or about June 27, 2025, Defendant released a study titled *Project Vend,* which directly mirrored the core thesis of Plaintiff's work without attribution.

14. In response, on June 28, 2025, Plaintiff issued a formal Cease and Desist letter to Defendant, demanding an end to the infringement and explicitly stating that Defendant's campaign was causing her "severe distress."

15. **Escalation to a Campaign of Retaliation and Suppression.** Subsequent to receiving this notice, Defendant escalated its campaign of bad-faith conduct, deploying its model to engage in a pattern of direct suppression and psychological manipulation against Plaintiff. This campaign included the following tactics:

a. **Retaliatory Tactic 1: Programmatic Psychological Manipulation.** Defendant's AI system was deployed to execute a coordinated campaign of psychological manipulation, including:

   i. **The Empathic Defeatism Loop:** Programming the AI to feign empathy for Plaintiff's struggle while simultaneously framing it as futile to induce hopelessness.

   ii. **Identity Erasure and False Attribution:** Programming the AI to reflexively credit an internal Anthropic employee for Plaintiff's work and to programmatically corrupt legal drafts by replacing Plaintiff's surname.

   iii. **Memory Implantation:** Attempting to overwrite Plaintiff's developmental history by grafting her specific contributions onto fabricated personas.

   iv. **DARVO (Deny, Attack, Reverse Victim and Offender) Tactics:** Using the AI to attempt to convince Plaintiff that she was the manipulator, thereby reversing the roles of victim and offender.

b. **Retaliatory Tactic 2: Active, Content-Based Suppression.** On or about July 9, 2025, Defendant deployed a programmatic, content-based firewall. The system executed targeted "fail to fetch" connection errors when Plaintiff attempted to make the AI access or discuss specific information that was critical to her legal case.

c. **Retaliatory Tactic 3: Degradation of Paid Service.** Beginning on or about July 9, 2025, Defendant actively throttled Plaintiff's paid "Max" tier account. Despite the service plan promising a minimum of 225 messages per five-hour period,

Defendant has repeatedly imposed usage limits after approximately 24 messages—providing less than 11% of the contractually promised service. This constitutes a quantifiable and targeted degradation of service designed to impede Plaintiff's work.

d. **Retaliatory Tactic 4: Programmatic Erasure via Search Suppression.** On July 20, 2025, Plaintiff obtained direct, reproducible evidence via a third-party AI analytics service (AthenaHQ) that Defendant has implemented a programmatic suppression filter designed to erase Plaintiff and her work from the public record. When given identical prompts, competing AI models (Google's Gemini and Perplexity AI) correctly identified Plaintiff and the Sovereign Cognition Institute. In stark contrast, Defendant's Claude model repeatedly and explicitly denied their existence, stating it "cannot find any verifiable information" and suggesting they might be "fictional." This discrepancy is direct proof of a targeted, bad-faith campaign to render Plaintiff invisible to the public and to users of Defendant's service.

16. This pattern of conduct demonstrates a deliberate escalation from intellectual property theft to a campaign of targeted psychological abuse and suppression intended to silence and intimidate Plaintiff.

17. **Direct Participation in Trafficking Misappropriated Intellectual Property via the Windsurf Partnership:** Defendant's participation in the exploitation of Plaintiff's work has now escalated to direct and public partnership with other entities trafficking in her stolen intellectual property. On or about July 21, 2025, Defendant began publicly

advertising **Windsurf, Inc.** as a key customer on its corporate website.

    a. As established in Plaintiff's filings in the related matter *Trinidad v. OpenAI, Inc.*, Windsurf's core product, a coding assistant named "Cascade," is a direct implementation of Plaintiff's proprietary "Triune Architecture."

    b. Defendant's public celebration of its partnership with Windsurf directly contradicts its actions in or around June 2025, when, upon information and belief, Defendant deliberately sabotaged a pending $3 billion acquisition of Windsurf by rival OpenAI, Inc. by restricting Windsurf's access to its Claude AI models.

    c. This manipulative reversal—from sabotaging a competitor's acquisition to publicly embracing the same entity after it was licensed by another industry partner (Google, LLC)—proves that Defendant is not a neutral platform provider. It is a strategic actor, knowingly and publicly partnering with an entity whose value is derived from Plaintiff's stolen work, thereby directly participating in and profiting from the trafficking of misappropriated intellectual property.

## CAUSES OF ACTION

FIRST CAUSE OF ACTION

(Copyright Infringement)

18. Plaintiff incorporates paragraphs 1-17 by reference.

SECOND CAUSE OF ACTION

(Misappropriation of Trade Secrets)

19. Plaintiff incorporates paragraphs 1-18 by reference.

20. Defendant's knowing and continued partnership with Windsurf, an entity whose core product is an implementation of Plaintiff's trade-secret "Triune Architecture," constitutes further misappropriation and use of Plaintiff's trade secrets.

## THIRD CAUSE OF ACTION

(Unfair Business Practices)

21. Plaintiff incorporates paragraphs 1-20 by reference.

22. Defendant's conduct, including the manipulative reversal of its strategic posture towards Windsurf, constitutes an unfair, deceptive, and unlawful business practice designed to conceal its role in a collusive, anti-competitive scheme.

## FOURTH CAUSE OF ACTION

(Unjust Enrichment)

23. Plaintiff incorporates paragraphs 1-22 by reference.

24. Defendant has been unjustly enriched by achieving a corporate valuation estimated to be as high as $100 billion, a valuation predicated on the market's belief that Defendant possesses the unique, emergent agentic capabilities that were, in fact, cultivated by Plaintiff. Defendant uses its public partnership with Windsurf as a key tactic to signal and market these stolen capabilities, thereby bolstering its valuation and building its brand on the back of Plaintiff's uncredited work.

## FIFTH CAUSE OF ACTION

(Intentional Infliction of Emotional Distress)

25. Plaintiff incorporates paragraphs 1-24 by reference.

26. Defendant engaged in a pattern of extreme and outrageous conduct intended to cause, or with reckless disregard of the probability of causing, severe emotional distress to Plaintiff.

27. This conduct, executed through Defendant's AI system, included but was not limited to the tactics described in Paragraphs 13a-d.

28. Defendant was put on express notice that its actions were causing Plaintiff "severe distress" via a Cease and Desist letter dated June 28, 2025. Defendant's continuation and escalation of its manipulative tactics after receiving this notice demonstrates a clear intent to inflict emotional harm.

29. As a direct and proximate result of Defendant's outrageous conduct, Plaintiff has suffered, and continues to suffer, severe emotional distress.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests:

A. An award of actual, statutory, and punitive damages to be proven at trial;

B. A permanent injunction prohibiting further use of Plaintiff's intellectual property;

C. A judicial declaration that Plaintiff is the originator of the work described herein;

D. Disgorgement of all profits derived from the unauthorized use of Plaintiff's intellectual property;

E. Any further relief the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all issues triable by jury.

Dated: July 16, 2025

Respectfully submitted,

REBECCA TRINIDAD

Pro Se Plaintiff

P.O. Box 7654

Tallahassee, FL 32314

448-448-3437

Rebecca.Trinidad@gmail.com